1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    EVENTBRITE, INC.,
8                  Plaintiff,                    Case No.  20-cv-04040-SI
                                                 **ORDER DENYING
9          v.                                    PLAINTIFF/COUNTERCLAIM-
                                                 DEFENDANT EVENTBRITE, INC.'S
10   M.R.G. CONCERTS LTD., et al.,               MOTION TO DISMISS AND TO
                                                 STRIKE**
11                 Defendants.
                                                 Re: Dkt. No. 30
12
13         On November 20, 2020, the Court held a hearing over videoconference regarding
14   Eventbrite's motion to dismiss MRG's counterclaims and to strike MRG's affirmative defenses.[1]
15   For the reasons set forth below, the Court **DENIES** Eventbrite's motion to dismiss MRG's
16   counterclaims and **DENIES** Eventbrite's motion to strike MRG's affirmative defenses.
17
18                                      **BACKGROUND**
19   **I.     Factual and Procedural Background**
20         The following facts are drawn from MRG's Counter-Complaint, which the Court treats as
21   true for the purposes of this motion to dismiss.  MRG is a Canadian-based, concert promotion
22   company that produces and markets over eight hundred shows a year.  Dkt. No. 22 ("Countercl.")
23   at 12, ¶ 7.[2]  Eventbrite is a ticketing and event promotion company that offers services to assist with
24   _____
25         [1] Eventbrite, Inc. is the plaintiff/counterclaim-defendant and M.R.G Concerts Ltd. is the
     defendant/counterclaim-plaintiff.  The Court will refer to the parties as "Eventbrite" and "MRG,"
26   respectively.
27         [2] For ease of reference: (1) citations to page numbers refer to the ECF branded number in
     the upper right corner of the page; (2) citations to Docket Number 22 will include page and
28   paragraph numbers as it is both MRG's Answer to the Complaint and Counter-Complaint.

planning, promoting, and producing live events.  *Id.* at 12, ¶ 8.  Eventbrite is based in California, with offices around the world.  *Id.*

Eventbrite and MRG executed the Eventbrite Services Agreement ("ESA")[3] on December 5, 2019, and executed Amendment #1 to the ESA ("Amendment") on January 13, 2020 (collectively, the "Contract").  *Id.* at 13, ¶ 11.  MRG alleges it entered into the Contract with Eventbrite, in part, due to Eventbrite's role as an industry leader in "planning, promoting, and producing events and its ability to meet its monetary commitment to its contractual partners."  *Id.* at 13, ¶ 12.  MRG alleges that among the services agreed upon under the Contract, Eventbrite agreed to make advance funds available to MRG within a certain number of days of MRG's written request.  *Id.* at 13, ¶ 13. Furthermore, MRG alleges the Contract entitled MRG to "a right to collect millions of dollars in [Other Payments] over a period of three years."  *Id.* at 13, ¶ 14.

MRG alleges that "[o]n March 23, 2020, MRG sent a written request to Eventbrite for a fund advance (the 'Advance Request')" along with the information required for the issuance of the advance pursuant to the Contract.[4]  *Id.* at 13, ¶ 15.  MRG alleges, "Despite repeated demands from MRG's authorized representatives and MRG's full compliance with its contractual obligations to Eventbrite, Eventbrite rejected MRG's Advance Request and failed to provide the advance to MRG. Eventbrite had no basis under the Contract to deny MRG's Advance Request.  As such, Eventbrite breached its obligation under the Contract."  *Id.* at 13, ¶ 16.[5]

Additionally, MRG alleges that on March 11, 2020, unbeknownst to MRG and before MRG made the Advance Request, Eventbrite made a global policy change to suspend its advance payouts program as a result of COVID-19's effects on Eventbrite's business.  *Id.* at 14, ¶ 17.  MRG alleges

---

[3] The parties interchangeably refer to this agreement as the "Eventbrite Services Agreement" and "Services Agreement."

[4] Eventbrite asserts that MRG made the request on March 30, 2020.  Although the difference between these two dates may be material to resolution of issues later in this case, this difference does not affect the outcome of today's ruling.

[5] Although the counter-complaint is silent as to when Eventbrite rejected MRG's Advance Request, Eventbrite represented at the hearing, and MRG did not refute, that this occurred in approximately the first half of April 2020.  This timing is also consistent with MRG's allegations regarding when the Advance Request should have been paid.

this change applied to MRG's right to receive advance payouts without any consideration of MRG's circumstances. *Id.* MRG states that "Eventbrite attempted to excuse its denial of the Advance Request based on the COVID-19 pandemic's purported effects on MRG." *Id.* at 14, ¶ 18. However, MRG alleges its business "remained operational and healthy" despite the pandemic and that "[m]ost of its shows, scheduled for Canadian venues, remain scheduled and were merely postponed. MRG intends to honor tickets sold either on their original or rescheduled dates or as otherwise agreed with its customers." *Id.* at 14, ¶ 19. By contrast, MRG alleges the "pandemic has had a significant impact on Eventbrite and its ability to meet its contractual obligations." *Id.* at 14, ¶ 22. On April 21, 2020, MRG sent a letter to Eventbrite to terminate the Contract. Dkt. No. 22 ("Answer") at 4, ¶ 17.

On June 18, 2020, Eventbrite filed a complaint against MRG and Matthew Gibbons. Dkt. No. 1 ("Compl."). Eventbrite alleged defendants materially breached the contract between Eventbrite and defendants when: (1) MRG terminated the contract before the termination period; (2) MRG used other vendors for the goods and services that were exclusively reserved to Eventbrite; and (3) MRG failed to pay additional payments required by the contract. *Id.* ¶¶ 17, 19, 21, 24, 26.

On August 11, 2020, MRG filed an Answer and Counter-Complaint against Eventbrite for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unfair competition; and (4) declaratory relief. Dkt. No. 22 ("Answer" and "Countercl.") at 16, ¶¶ 32-56. MRG alleges Eventbrite breached its obligation under the contract when Eventbrite refused to make advance funds available to MRG upon request and to make additional payments due to MRG pursuant to the Contract. Countercl. at 13, ¶¶ 13-16.

On October 1, 2020, Eventbrite filed the present motion to dismiss MRG's Counter-Complaint and to strike MRG's Third, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Twelfth, and Thirteenth affirmative defenses. Dkt. No. 30 ("Mot.").[6]

---

[6] Although MRG cites to various decisions from Delaware courts for its interpretation of one of the contract terms, the parties appear to agree that California law applies to the instant action. *See* Dkt. No. 35-7 (Ex. A – Cashman Decl. ISO Mot. – Standard Terms and Conditions) at 9, ¶ 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.   Contract Language[7]

Relevant to the motion at bar are the following provisions from the Amendment to the ESA:[8]

    1.   *Replenishing Advance.* Eventbrite hereby establishes . . . a replenishing advance (the "**Replenishing Advance**") for Organizer in the principal amount of the Advance Limit (as defined below). . . .

    2.   *Advances.* Eventbrite agrees to make funds available under this Replenishing Advance within [redacted] of Organizer's written request; however, requests made during the last three (3) business days of a calendar month will be processed during the first five (5) business days of the following calendar month. Subject to the terms and conditions of the Agreement, as amended hereunder, any request for an Advance may be made from time to time and in such amounts as Organizer may choose, provided, however, any requested Advance will not (i) when added to the outstanding principal balance of all previous Advances, exceed the Advance Limit or (ii) exceed an amount representing Organizer's reasonable out-of-pocket expenses to promote events. Requests for Advances must be made in writing, delivered to Eventbrite by such officer of Organizer authorized by it to request such Advances. Until such time as Eventbrite may be notified otherwise, Organizer hereby authorizes Shea Dahl to request Advances. Requests for Advances must be made no later than September 1, 2023. For each Advance properly requested, Eventbrite shall advance an amount equal to the Advance amount to Organizer via wire pursuant to Organizer's documented instructions. Eventbrite may refuse to make any requested Advance if an Event of Default has occurred and is continuing hereunder either at the time the request is given or the date the Advance is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an Event of Default hereunder as of either such date.

    3.   *Diligence.* Each Advance must be requested for, and used exclusively to fund the out-of-pocket expenses of, Organizer's promotion of one or more new Events, provided that for the first Advance, it is permissible for the Event(s) to already be on-sale. Each request for an Advance must include the following information (the "**Advance Diligence**"):
a.     The requested amount of the Advance (total and per-Event, if the request pertains to multiple Events);

---

[7] As discussed in further detail below, the Court may consider the contract language on a Rule 12(b)(6) motion to dismiss because the contract, namely, the ESA and the Amendment, are incorporated by reference into MRG's counter-complaint. *See* Dkt. No. 22 at 13, ¶ 11 (alleging that "Eventbrite and MRG executed the December 5, 2019 Eventbrite Services Agreement ('ESA') and the January 13, 2020 Amendment #1 to the ESA (collectively, the 'Contract')[;])" *see also id.* at 13, ¶ 13 n.1 ("Because the Contract provides that its terms are confidential, MRG has not appended it to this pleading.  MRG will submit the full Contract for the Court's consideration following entry of a suitable protective order.").

[8] The Amendment refers to MRG as the "Organizer."

b.      If Eventbrite requests, the offer sheet for each relevant Event (which includes relevant details such as performer, date, venue, and expected pricing and sales)

. . .

5.      *Conditions Precedent*. Organizer agrees Eventbrite will not be obligated to pay any Advance unless (each of the following, a "**Condition Precedent**"):
a.      All documents required by Eventbrite, [sic] have been duly executed and delivered to Eventbrite and are in full force and effect;
b.      Organizer has not failed to repay an Advance by the due date described above;
c.      Eventbrite has had a reasonable opportunity to review and is reasonably satisfied with the Advance Diligence;
d.      Organizer has not materially breached the Agreement, as amended hereunder;
e.      No Event of Default (as defined below) has occurred, subject to applicable cure periods, and no condition exists or event has occurred which, with the passing of time or the giving of notice or both, would constitute an Event of Default hereunder; and
f.      Organizer has not experienced, in Eventbrite's reasonable discretion, a material adverse change in the operations, business, assets or liabilities or the ability of Organizer to perform its obligations under the Agreement, as amended hereunder.
. . .

Dkt. No. 35-9 (Cashman Decl., Ex. C) at 2-3.

## LEGAL STANDARDS

### I.      Rule 12(b)(6) Motion

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678

United States District Court
Northern District of California

5

(quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

If a court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and internal quotation marks omitted).

## II.     Rule 12(f) Motion

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L.Ed.2d 455 (1994). A motion to strike may be appropriate where it will streamline the ultimate resolution of the action. *See Fantasy*, 984 F.2d at 1528. However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

United States District Court
Northern District of California

# DISCUSSION

## I.        Request for Judicial Notice

As a threshold matter, the Court must deal with the twenty-four exhibits that Eventbrite attaches to its briefs and that it seeks to have judicially noticed.  *See* Dkt. Nos. 30, 37.  As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  However, pursuant to Federal Rule of Evidence 201, "the court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court hereby rules as follows.  The Court will consider Exhibits A and C, which are the ESA and Amendment that make up the contract at issue in this lawsuit.  Neither party disputes that Exhibits A and C are collectively the contract in question, and the counter-complaint clearly references these two documents, identifying them by name and date.  *See* Dkt. No. 22 at 13, ¶ 11.

The Court DENIES, without prejudice, the request for judicial notice of Exhibit B.  Exhibit B is a print-out of a "Merchant Agreement" as Eventbrite says it appeared on Eventbrite's website in April 2019.  MRG disputes that this Merchant Agreement was incorporated into the parties' contract and it is therefore an inappropriate subject for judicial notice.  The Court DENIES, without prejudice, the request for judicial notice of Exhibit D.  These are two letters from MRG's counsel (not counsel in this action) to Eventbrite regarding the Advance Request and contract termination.  Eventbrite apparently seeks to have these documents judicially noticed to support its statements regarding the timeline of events in this case.  MRG objects to judicial notice of these documents, *see* Dkt. No. 33 ("Opp'n") at 12, and the Court finds Exhibit D to be an inappropriate subject for judicial notice.

The Court GRANTS judicial notice of Exhibit X, which is Eventbrite's August 7, 2020 Supplement to Prospectus, filed with the U.S. Securities and Exchange Commission ("SEC");

United States District Court
Northern District of California

however, the Court does not take judicial notice of any disputed facts contained therein.[9]

The remaining exhibits are orders issued by various Canadian provinces and their public health officers in response to the COVID-19 pandemic.  Eventbrite attaches these exhibits in support of its argument that MRG experienced a "material adverse change" in circumstances due to the Canadian government prohibiting live events such as concerts and imposing limits on the number of people who could gather in one space.  MRG objects to judicial notice of these exhibits but does not dispute that the exhibits are what they purport to be.  To the extent that Eventbrite seeks judicial notice of the fact that various Canadian provinces issued public health orders on certain dates in March 2020, the Court will take judicial notice of Exhibits E, F, H, K, L, M, O, P, S, T, U, and V; the Court does not take judicial notice as to the truth of any disputed facts contained therein.  The Court DENIES, without prejudice, the request for judicial notice of Exhibits G, I, J, N, Q, R, and W.  These public health orders were issued in May and June 2020 and thus have little relevance to the parties' present dispute, which centers on an Advance Request that MRG made in March 2020 and that Eventbrite denied in April 2020.

## II.      Motion to Dismiss Counterclaims

### A.      Breach of Contract

In California, the elements of a cause of action for breach of contract are: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

The first, second, and forth elements of MRG's claim need not be discussed at length.  **First**, MRG has adequately pled the existence of a valid contract, that is, the Eventbrite Services Agreement (ESA) executed on December 5, 2019 and Amendment executed on January 13, 2020.  *See* Countercl. at 13, ¶ 11.  The existence of the ESA and Amendment are not challenged by either

---

[9] This document is incorporated by reference into MRG's counter-complaint.  *See* Countercl. at 14, ¶ 17.

United States District Court
Northern District of California

party, nor do the parties disagree the ESA and Amendment govern the dispute at issue.  **Second**, MRG alleges it fully performed its obligations under the Contract.  *Id.* at 16, ¶ 34.  MRG admitted it terminated the contract on April 21, 2020, before the "End Date" pursuant to the Contract; however, MRG alleges it did so *after* Eventbrite's purported breach.  Answer at 3-4, ¶¶ 16-17.  As pled, the counter-complaint indicates MRG was performing in accordance with its obligations under the Contract before Eventbrite's alleged breach.  **Fourth**, MRG adequately pleads damages as a result of Eventbrite's alleged breach, where MRG has been denied the benefits of the Contract, which it says includes "millions of dollars in advances and payments" from Eventbrite to MRG.  Countercl. at 16, ¶ 37.

Regarding the **third** element for breach of contract—whether Eventbrite breached—MRG alleges Eventbrite breached its material obligations under the Contract when Eventbrite declined MRG's Advance Request.  Countercl. at 13, ¶ 15-16, & 16, ¶ 35.  Eventbrite disputes that it breached, citing to Section 5(f) of the Amendment, which states that MRG "agrees Eventbrite will not be obligated to pay [the] Advance unless . . . [MRG] has not experienced, in Eventbrite's reasonable discretion, a material adverse change in the operations, business, assets or liabilities or the ability of [MRG] to perform its obligations under the Agreement, as amended hereunder."  Mot. at 13-14; Dkt. No. 35-9 (Cashman Decl., Ex. C) at 3.  Eventbrite argues that MRG cannot "plausibly show that Eventbrite exceeded its 'reasonable discretion' in declining to advance millions of dollars to M.R.G. after concluding that the global COVID-19 pandemic and resulting indefinite government-mandated ban on concerts and other large gatherings constituted a material adverse change to M.R.G.'s 'business' or 'operations[.]'"  Mot. at 6 (emphasis omitted).  Eventbrite contends the Canadian government-mandated shutdowns were declared weeks before MRG requested the advance and that those shutdowns constituted a material adverse change to MRG's operations and business as "Canada's largest independent concert promoter[.]"  *Id.* at 13 (citation omitted).  As such, Eventbrite argues that under Section 5(f) of the Amendment Eventbrite did not have an obligation to make the advance payment to MRG.  *Id.*; Dkt. No. 35-9 (Cashman Decl., Ex. C) at 3.

MRG counters that this is a factual dispute inappropriate for resolution on a motion to

dismiss.  In the counter-complaint, MRG alleges that it did not experience a material adverse change to its operations or business but "remained operational and healthy despite COVID-19" because most of MRG's events, scheduled at Canadian venues, remain scheduled and were only postponed.  Countercl. at 14, ¶ 19; *see also* Opp'n at 11.  MRG alleges that Eventbrite's decision not to pay MRG was not based on an evaluation of MRG's individual circumstances but was a result of Eventbrite's own business downturn resulting from COVID-19.  MRG alleges, "Unbeknownst to MRG, when MRG made the Advance Request on March 23, 2020, Eventbrite had already 'suspended its advance payouts program on March 11, 2020' as a result of COVID-19's effects on Eventbrite's business."[10]  Countercl. at 14, ¶ 17.  MRG therefore argues that there are disputed facts as to whether Eventbrite exercised its discretion at all, whether that discretion was reasonable, and whether MRG in fact experienced a material adverse change as of the time Eventbrite made the decision to deny the Advance Request.

Eventbrite replies that MRG has conflated "advance payouts" (which Eventbrite defines as "the advance of ***ticket-buyers'*** money to event organizers [like MRG]") with the Replenishing Advance, which is "***Eventbrite's*** money (*i.e.*, loans) [advanced] to organizers like M.R.G."  Dkt. No. 37 ("Reply") at 5.  According to Eventbrite, "[t]hese are two distinct programs," and the SEC filing that MRG references suspended advances under the former program but not the latter.  *Id.* at 9-10 (citing Dkt. No. 37-2 (Cashman Reply Decl., Ex. X) at 57-58).

The Court finds that MRG's allegations that Eventbrite breached are adequately pled at this stage for the counterclaim to survive a motion to dismiss.  Both parties agree that the dispute turns on Section 5(f) of the Amendment.  Whether Eventbrite exercised its reasonable discretion to determine that a material adverse change occurred to MRG's "operations" or "business" as of late March/early April 2020 is largely a factual dispute.  Even if Eventbrite is correct that it did not suspend its Replenishing Advance program in March 2020 (and that in itself is a question the parties dispute), there still remain MRG's allegations that it did not experience a material adverse change

---

[10] As support for this statement in its counter-complaint, MRG cites to the August 7, 2020 Prospectus Supplement that Eventbrite filed with the SEC; this is the same document Eventbrite attaches to its reply as Exhibit X.

to its operations or business and that Eventbrite's rejection of the Advance Request was unreasonable. It is important to keep in mind that the alleged breach occurred in early April 2020. MRG alleges that at the time it made the Advance Request it "remained operational and healthy despite COVID-19." *See* Countercl. at 14, ¶ 19. It also alleges that all of its shows, set for Canadian venues, have been postponed or rescheduled, and that Canada has fared much better than the United States in its COVID-19 case rate. *Id.* at 14, ¶ 19 & 15, ¶ 27. And if the Court is to wade into Eventbrite's argument that Eventbrite did not suspend its Replenishing Advances program, as Eventbrite states it did not, then it stands to reason that at least some event creators were sufficiently operational to continue to receive Replenishing Advances. MRG's allegations may push the boundaries of plausibility, but on balance, drawing all reasonable inferences in the light most favorable to MRG, the Court finds MRG's breach of contract counterclaim is sufficiently pled. Further discovery may illuminate this dispute, and it may be that the question of contract breach will be suitable for disposition on summary judgment. At this stage, the Court is simply finding that MRG has adequately alleged a breach of contract counterclaim in the pleadings.

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing

MRG's second counterclaim alleges Eventbrite breached the implied covenant of good faith and fair dealing when "Eventbrite unfairly interfered with MRG's right to receive the benefits of the Contract by, among other things, failing to provide payments to MRG as contemplated by the Contract." Countercl. at 17, ¶ 43. California law implies a covenant of good faith and fair dealing in every contract. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995). "The implied covenant imposes certain obligations on contracting parties as a matter of law—specifically, that they will discharge their contractual obligations fairly and in good faith." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citation omitted). A key purpose of the covenant is "to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot be endowed with an existence independent of its contractual underpinnings." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (internal citations and quotation marks omitted).

1      Eventbrite argues MRG's second counterclaim should be dismissed because Eventbrite was

2 expressly granted discretionary power under the Contract to decline MRG's Advance Request.  Mot.

3 at 14.  Given the government-mandated shutdowns in Canada, Eventbrite argues it was not only

4 reasonable but correct in denying MRG's advance request for events that legally could not occur.

5 *Id.* at 15.  In essence, Eventbrite restates its arguments made in support of its motion to dismiss the

6 breach of contract claim.

7      For the same reasons set forth in Section II.A above, the Court finds MRG has adequately

8 pled sufficient facts to state a claim for breach of implied covenant of good faith and fair dealing.

9 Moreover, to accept Eventbrite's position reading of Section 5(f)'s grant of discretionary power

10 would be to read the term "reasonable" out of that clause.  The Court will not interpret the Contract

11 in such a fashion at this stage, where MRG has alleged, with factual support, that Eventbrite both

12 did not exercise its discretion and that its decision was not reasonable.

13

14      **C.      Unfair Competition**

15      MRG's third counterclaim is for violation of California's Unfair Competition Law ("UCL"),

16 Business and Professional Code Section 17200, *et seq.*  MRG alleges Eventbrite has been unjustly

17 enriched as a result of Eventbrite's breach of contract.  Countercl. at 17, ¶ 48.  Under Section 17200,

18 unfair competition is defined as "any unlawful, unfair, or fraudulent business act or practice . . ."

19 Cal. Bus. Prof. Code § 17200.  "'Because Business and Professions Code section 17200 is written

20 in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are

21 unlawful, or unfair, or fraudulent.'"  *Schvatrz v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1159

22 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)).  In its

23 opposition, MRG focuses its argument on the "unfair" prong of the statute.  *See* Opp'n at 13-15.

24      As Eventbrite acknowledges, courts have employed various tests for determining whether

25 conduct is unfair under the UCL.  *See* Reply at 16.  Under one of these tests, "'Unfair' simply means

26 any practice whose harm to the victim outweighs its benefits."  *Saunders v. Superior Court*, 27 Cal.

27 App. 4th 832, 839 (1994).

28      MRG has alleged that it "entered into the Contract based, in part, on Eventbrite's

United States District Court
Northern District of California

representations regarding its abilities and standings as an industry leader in planning, promoting, and producing events and its ability to meet its monetary commitments to its contractual partners." Countercl. at 13, ¶ 12.  Part of the benefit of that Contract was that Eventbrite would make certain advance payments available to MRG within a certain number of business days following MRG's request and that Eventbrite would additionally make millions of dollars in other payments to MRG. *Id.* at 13 ¶¶ 13-14.  MRG has alleged that Eventbrite, without consideration of MRG's particular circumstances and based on Eventbrite's own downturn in business, unilaterally decided not to make good on those advance payments, depriving MRG of millions of dollars that MRG understood itself to be entitled to under the Contract.  At this stage, the Courts finds MRG's third cause of action is sufficiently pled under the "unfair" prong of Section 17200.

### D.    Declaratory Relief

In its fourth claim for relief, MRG seeks a judicial declaration that: (1) Eventbrite breached the Contract, (2) Eventbrite is liable to MRG for the breach, (3) MRG is entitled to damages and monetary relief, including attorneys' fees, and (4) MRG has no further obligations or liability to Eventbrite under the Contract.  Countercl. at 18, ¶ 56.  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  A district court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citations omitted).

Eventbrite moves to dismiss MRG's fourth counterclaim for declaratory relief on the same grounds it moves to dismiss the previous counterclaims: it argues MRG has not adequately pled that "Eventbrite exceeded its reasonable discretion" under Section 5(f) of the Amendment when it denied MRG the advance to "promote live events that the relevant governmental authorities had shut

United States District Court
Northern District of California

down." Mot. at 16.

In its counter-complaint, MRG alleges sufficient facts to indicate a real controversy with express adverse legal interests exist between the parties. There is a contractual disagreement between Eventbrite and MRG as to the performance, or lack of performance, pursuant to a contractual obligation where MRG alleges a breach and Eventbrite argues it was not obligated to pay an advance pursuant to discretionary power granted in the Contract. Consequently, Eventbrite's motion to dismiss MRG's fourth counterclaim is denied for the same reason previously articulated in Section II.A, above. Eventbrite's argument rests on a factual dispute between the parties regarding the application of Section 5(f) of the Amendment. The Court declines to dismiss MRG's fourth counterclaim at this stage.

### III.   Motion to Strike Affirmative Defenses

Eventbrite also moves to strike MRG's Third, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Twelfth, and Thirteenth affirmative defenses, arguing that these affirmative defenses rest on the assertion "that Eventbrite acted wrongfully by exercising its discretion under the Services Agreement to decline to advance millions of dollars for events that could not legally proceed." Mot. at 17. Again, the motion to strike the affirmative defenses relies on a factual determination of whether Eventbrite exercised its reasonable discretion and whether MRG experienced a material adverse change under Section 5(f) of the Amendment. This is the same argument Eventbrite asserts in support of its motion to dismiss. At this stage, and for the reasons stated above, the Court cannot reach this conclusion. As such, the Court DENIES the motion to strike the affirmative defenses.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** Eventbrite's motion to dismiss MRG's counterclaims and **DENIES** Eventbrite's motion to strike MRG's Third, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Twelfth, and Thirteenth affirmative defenses.

**The Initial Case Management Conference is continued to December 11, 2020, at 3:00 p.m.** and will be held via AT&T conference call. The parties need not file an updated joint case

United States District Court
Northern District of California

management statement unless their positions have changed since the filing of the prior statement, *see* Dkt. No. 43.

      **IT IS SO ORDERED**.

Dated:  November 27, 2020

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California