UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVENTBRITE, INC., <br><br> Plaintiff, <br><br> v. <br><br> M.R.G. CONCERTS LTD., et al., <br><br> Defendants. | Case No. 20-cv-04040-SI <br><br> **ORDER (1) DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND (2) GRANTING PLAINTIFF'S MOTION FOR FEES** <br><br> Re: Dkt. Nos. 206, 207 |

Before the Court are two motions: (1) defendants' renewed motion for judgment as a matter of law ("JMOL") and (2) plaintiff's motion for fees ("Fees Motion"). Dkt. Nos. 206 and 207. The Court previously vacated the August 26, 2022 hearing in this matter pursuant to Local Rule 7-2(b). For the reasons stated below, defendants' JMOL is DENIED and plaintiff's motion is GRANTED.

**BACKGROUND**

San Francisco based plaintiff, Eventbrite, is a ticketing company and defendant MRG is a Canadian concert promotion company owned by the only other defendant, Matthew Gibbons. Trial Transcript ("Tr.Trans.") at 22:11-12[1]; 354:7-8; 342:18-20; 343:3-5. In June 2020, Eventbrite filed this action – which, at its core, is a breach of contract dispute. Dkt. No. 1 (Complaint). After presiding over (1) Eventbrite's motion to dismiss and strike MRG's counterclaim; (2) discovery disputes; (3) Eventbrite's motion for summary judgment; (4) ten motions in limine and (5) a week-

---

[1] The Trial Transcripts from May 16-23, 2022 are not filed on the ECF docket in this matter. Thus, page number references refer to the Trial Transcript page number in the upper right hand corner of the page.

long trial, the Court is familiar with the case and the facts are well established.

The Court will cover the most pertinent facts below.

## I.   The Parties' Contract

On September 10, 2018, Eventbrite and MRG signed an agreement under which MRG received $1.5 million in Sponsorship Payments. JX-003 ("2018 Services Agreement"). Subsequently, Eventbrite extended an additional $1,568,842.28 in interest-free loans to MRG, referred to as a "Replenishing Advance" in the parties' agreements. *See Id.*; Trial Tr. 256:13-257:2. The parties later negotiated another agreement; on December 5, 2019, entering into a contract called the Eventbrite Services Agreement (the "Services Agreement"). Dkt. No. 206-10 (Services Agreement). On January 13, 2020, the parties entered into Amendment #1 to the Services Agreement (together, with the Services Agreement, the "Contract"). Dkt. No. 206-11 (Amendment #1 to Services Agreement). This new Contract included an additional $3 million in Sponsorship Payments upon signing, with another $2 million to follow in subsequent years, plus a significant expansion of the Replenishing Advance program, which could be used solely for promotion of MRG's events. Dkt. No. 206-10 at 5[2] (§7 of Services Agreement re Sponsorship Payment); Dkt. No. 206-11 at 2-3 (Amendment #1 to Services Agreement discussing Replenishing Advances); Trial Tr. (Dahl) 392:14-394:1. The Contract makes clear should MRG terminate the Contract early, MRG would return all Sponsorship Payments and outstanding Replenishing Advances, as well as make a True-Up Payment, pursuant to a prescribed formula, ensuring Eventbrite a minimum return. Dkt. No. 206-10 at 5 (§8 of Services Agreement discussing True-Up Payment); Dkt. No. 206-11 (Amendment #1 to Services Agreement).

## II.   The Dispute Arises

In March 2020, the COVID-19 pandemic hit, sending many industries, including live events, into disarray. The parties' contractual relationship fell apart between March and April 2020 and the

---

[2] For all citations to evidence, other than those to the Trial Transcripts, page number references refer to the ECF branded number in the upper right corner of the page.

2

parties hotly contest who breached the contract first.

On March 11, 2020, Shea Dahl, MRG's Senior Vice President, emailed his primary contact at Eventbrite, Mitch Forster, about MRG's desire to make a Replenishing Advance request. Dkt. No. 206-27 (Email Chain from 3/11/20-3/12/20 between MRG's Shea Dahl and Eventbrite re Replenishing Advances); Tr. Trans. (Dahl) 529:24-530:1. Mr. Dahl testified at trial that on March 12, 2020 he spoke with Mr. Forster who allegedly told Mr. Dahl that "Eventbrite was suspending all … advances, moving forward…" Tr. Trans. (Dahl) 558:15-559:23. Mr. Dahl testified at trial that from this conversation, he "inferred" Eventbrite was suspending Replenishing Advances, though Mr. Dahl admitted Mr. Forster never specifically said "Replenishing Advance." Tr. Trans. (Dahl) 646:11-25. MRG argues this amounted to an anticipatory repudiation of the parties' Contract. Dkt. No. 206 at 25-26 (JMOL).

On March 23, 2020, MRG requested Eventbrite provide it some $2 million in additional Replenishing Advances, to promote upcoming events. Dkt. No. 206-16 (3/23/20 Email from Shea Dahl to Eventbrite Requesting Replenishing Advance). MRG agues this request was improperly denied and that Eventbrite did not exercise good faith in evaluating MRG's request, thus constituting a breach of the parties' Contract. *Id*. at 26-29.

On March 30, 2020, MRG submitted another request for nearly double the amount of the March 23, 2020 request. Dkt. No. 206-18 (3/30/20 Email Chain in which MRG submits "an updated advance request" for $3,941,513.69). MRG argues that because Eventbrite did not respond or fund the March 30, 2020 request within the contractual time frame, Eventbrite breached the Contract. Dkt. No. 206 at 29-30.

Eventbrite argues it considered and rejected MRG's request based on the determination of Charles "Lanny" Baker, Eventbrite's CFO, that MRG had experienced a "material adverse change" in its "business" and "operations" in light of COVID-19. Trial Tr. (Baker) 789:11-790:10; see also Dkt. No. 206-11 at 3 (Amendment #1 at § 5(f)). Pursuant to the Contract, a condition precedent to Eventbrite funding a Replenishing Advance request from MRG was that MRG had not experienced a "material adverse change." *Id*.

The parties agree their contractual relationship ended on April 21, 2020, when MRG

3

terminated the Contract. Dkt. No. 206 at 11 (JMOL); Dkt. No. 209 at 23 (Opp. To JMOL).

Eventbrite filed the instant action in June 2020 alleging breach of contract and other various claims. Dkt. No. 1. (Complaint). On August 11, 2020, MRG filed a counter-claim also alleging breach of contract. Dkt. No. 22 (MRG Answer and Counter-Claim). After nearly two years of litigation, the matter went to trial on May 16, 2022. Dkt. No. 190 (Minute Entry from 5/23/22 First Day of Trial). On May 23, 2022, after a week-long trial, the jury returned a verdict: (1) finding MRG breached the Contract; (2) finding Eventbrite did not breach the Contract; and (3) and awarding Eventbrite $11 million dollars in damages. Dkt. No. 201 (Jury Verdict).

The parties now bring the two instant motions. First, MRG seeks JMOL arguing (1) the jury erred on the merits and MRG is not liable as a matter of law and (2) the jury erred when calculating damages as a matter of law and the $11 million award should be reduced. Dkt. No. 206 at 8 (JMOL). Second, Eventbrite brings a motion for (1) pre-judgment interest, (2) post judgment interest, and (3) attorneys' fees and costs. Dkt. No. 207 at 7 (Fees Mtn.).

## LEGAL STANDARD

### I. Judgment As A Matter of Law

#### A. Rule 50(b)

Under Federal Rule of Civil Procedure 50(b), a party may renew a motion for judgment as a matter of law after the jury returns a verdict. JMOL movants must meet a heavy burden as JMOL is proper only "'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Escriba v. Foster Poultry Farms*, Inc., 743 F.3d 1236, 1242 (9th Cir. 2014) (*quoting Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Id*. "[T]he court must not weigh the evidence, and instead should simply ask whether the nonmoving party has presented sufficient evidence to support the jury's conclusion." *Id*. (internal quotations, citations, and modifications omitted). "The court must accept the jury's credibility findings consistent with the verdict [and] may not substitute its view of the evidence for that of the jury."

4

*Winarto v. Toshiba Am. Elecs. Components, Inc*., 274 F.3d 1276, 1283 (9th Cir. 2001) (citations omitted). "In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and disregard all evidence favorable to the moving party that the jury is not required to believe." *Escriba*, 743 F.3d at 1242-43 (internal quotations and citations omitted).

### B.  Rule 59

"A Rule 59 motion for a new trial is confided to the discretion of the district court, whose decision will be overturned on appeal only for abuse of discretion." *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) (per curiam). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*., 762 F.3d 829, 842 (9th Cir. 2014). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id*.

### II.  Fees Motion

Although parties to litigation generally bear their own attorneys' fees, contractual clauses awarding fees to the prevailing party in actions on the contract are enforceable under California law. See Cal. Civ. Code § 1717(a); Cal. Civ. Proc. Code § 1021. Courts applying California law will also respect broader agreements between parties to award fees to the prevailing party in tort claims as well as contract claims, and apply ordinary principles of contract interpretation to determine whether a particular attorneys' fees clause encompasses claims beyond those to enforce the contract. *See, e.g., Gil v. Mansano*, 121 Cal. App. 4th 739, 742-44, 17 Cal. Rptr. 3d 420 (2004).

## DISCUSSION

### I.  MRG's Motion for Judgment As A Matter of Law

MRG argues the "jury erred on both the merits and in calculating damages," and asks the Court to "enter judgment in Defendants' favor, reduce the unwarranted damages award, or grant a

5

new trial to avoid injustice." Dkt. No. 206 at 8 (JMOL).  The Court disagrees.

### A.     MRG's Merits Arguments

Defendants' motion largely reiterates arguments raised on summary judgment, in the jury instruction conference, or during trial.  MRG argues Eventbrite (1) anticipatorily breached the parties' contract when it allegedly informed MRG it was suspending APOs and replenishing advances; (2) improperly denying MRG's March 23, 2020 request for a Replenishing Advance; and (3) failing to timely decide MRG's second request for a Replenishing Advance which was submitted on March 30, 2020.  See Dkt. No. 206 generally (JMOL).

MRG argues "the jury's award ignored [] overwhelming evidence presented at trial showing Eventbrite materially breached the parties' agreement on multiple occasions[.]" Dkt. No. 206 at 8.  The record shows no such thing – rather, MRG had its opportunity to put on its case and the jury, after weighing the evidence, simply did not agree with MRG's view.  Indeed, at summary judgment MRG insisted: "The jury should decide whether [Eventbrite's actions] to prevent, deny, and ignore valid requests were a fundamental breach of the underlying agreement that excused the other party's performance or led to the justifiable termination of the relationship."  Dkt. No. 90-3 at 23 (MRG Opp. To Eventbrite MSJ).  Further, in opposition to summary judgment MRG insisted the "issues in this case largely boil down to factual disputes about whether Eventbrite … use[d] its 'reasonable discretion'[3] to deny the advance requests in March 2020 based on the occurrence of a 'material adverse change' to MRG's business…" Dkt. No. 90-3 at 6 (MRG Opp. To MSJ).  After a week of testimony wrestling with those factual issues, the jury found for Eventbrite.  For all of the reasons set forth in plaintiff's opposition and in the Court's previous rulings on these issues, the Court finds

---

[3] The Court notes that it imposed the heavier "good faith" standard requested by MRG as opposed to the "objective standard of reasonableness" advocated by Eventbrite. Dkt. No. 118 at 10-12.  The parties hotly disputed how to interpret the phrase "reasonable discretion" in the parties' contract.  See Generally Dkt. Nos. 74, 82, and 100 (MSJ Briefing). The good faith standard meant Eventbrite's burden was heavier at trial – meaning Eventbrite had to act not only "objectively reasonably" but with "good faith." Thus, after advocating for and having the Court impose a heavier burden, and insisting the case be decided by a jury, MRG now argues the jury got it wrong when it did not rule for MRG, because of "undisputed evidence at trial regarding Eventbrite's breach of its contractual obligations." Dkt. No. 206 at 2.  The Court is unpersuaded.

6

1  defendants' arguments unpersuasive. In addition, the Court concludes there was substantial
2  evidence to support the jury's verdict and will discuss some of the evidence establishing such in
3  turn.

4  **Alleged Anticipatory Breach**. At trial, defendants argued MRG employee Shea Dahl was
5  told by an Eventbrite employee, Mitch Forester, that Eventbrite was suspending all advances which
6  MRG interpreted as Eventbrite anticipatorily breaching the contract by refusing to honor
7  Eventbrite's agreement to extend replenishing advances. Dkt. No. 206-27 (Email Chain from
8  3/11/20-3/12/20 between MRG's Shea Dahl and Eventbrite re Replenishing Advances); Tr. Trans.
9  529:24-530:1; 558:15-559:23. However, Mr. Dahl also admitted "replenishing advances" were
10 never specifically mentioned on the call and he "inferred" Eventbrite had made the decision to
11 cancel all replenishing advances. Tr. Trans 646:11-25.

12 Further, the jury could have reasonably concluded there was no anticipatory repudiation
13 because MRG went on to make requests for Replenishing Advances – indicating MRG believed it
14 was still possible to do so and the contract had not been breached.

15 **MRG's March 23, 2020 Request**. MRG argues the jury's verdict is improper because
16 Eventbrite allegedly breached the parties' contract when it denied MRG's March 23, 2020, request
17 for a replenishing advance. Dkt. No. 206 at 26-29. However, the jury had reasons for finding
18 otherwise, including the fact that MRG's request did not comply with the terms of the parties'
19 contract by failing to include offer sheets. Dkt. No. 206-11 at 2 (Amendment #1 §3(b) – requiring
20 offer sheets be submitted at Eventbrite's request in order for MRG to receive a Replenishing
21 Advance); Tr. Trans 482:4-18 (Dahl) (Q: You knew as of March 12th, 2020, that if MRG was going
22 to request a draw-down on that replenishing advance, that Eventbrite would probably want to see
23 those offer sheets. Correct? A: I – what he's saying here is that [Eventbrite] would want to see them,
24 yes.).

25 **MRG's March 30, 2020 Request**. MRG argues the jury's verdict is improper because
26 Eventbrite allegedly breached the parties' contract when (1) MRG made a request for a replenishing
27 advance on March 30, 2020 and (2) Eventbrite did not fund or otherwise communicate a decision
28 on the request by the April 7, 2020 deadline. Dkt. No. 206 at 29-30 (JMOL). MRG makes much

7

of the fact that Charles "Lanny" Baker was the only witness/testimony presented by Eventbrite at trial stating the decision to deny the request was made on March 20 or April 1, 2020 in light of Eventbrite's determination that MRG had experienced a material adverse change. Trial Tr. (Baker) 768:21-769:6; 770:3-8; 789:11-790:10. But that is the providence of a jury – to weigh testimony and decide facts. Significantly, MRG does not cite to a single authority or otherwise explain why the Court should construe the evidence differently than the jury, other than, looking at the evidence in the best light possible for MRG, the Court should. That is not the standard for a JMOL and it would be improper to do so.

### B. MRG Argues The Court Should Reduce Damages Awarded by the Jury

The Court reviews the damages award for substantial evidence and affords "substantial deference to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996), aff'd, 526 U.S. 687 (1999). MRG makes two arguments, both pertaining to the True-Up Provision, in support of the Court reducing the damages award, namely, the True-Up provision is: (1) an unenforceable penalty; and (2) speculative.[4] Dkt. No. 206 at 18-25 (JMOL).

The Court finds no reason to reduce the jury's damages award for all the reasons stated in the Court's previous orders as well as the arguments made in Eventbrite's opposition. The Court will address several of MRG's flawed arguments in more detail below.

MRG's arguments fail for a number of reasons. First, MRG's arguments are a regurgitation of its untimely motion in limine #3 which this Court denied. Dkt. No. 153 (MRG MIL #3); Dkt. No. 165 at 3 (Final Pre-Trial Order) ("MIL No. 3: To exclude testimony re: Eventbrite damages; DENY provided that Eventbrite does not rely on any evidence not previously produced to MRG."). Eventbrite complied with the Court's ruling, pointing to the plain language of the contract during trial. Tr. Trans. (Eventbrite Closing) 1198:5-18 (Mr. Cashman: "If you determine that MRG

---

[4] MRG also argues the True-Up Provision is not a valid liquidated damages clause. Dkt. No. 206 at 15 (JMOL). However, Eventbrite admits the True-Up Provision is not a liquidated damages clause (Dkt. No. 209 at 23 (Opp. to JMOL)) thereby mooting this argument.

breached the contracts by terminating it four months into a four-year deal, then the contracts specify what sums are to be pad.  The contracts provide the answer here.").

Which brings the Court to the next reason MRG's arguments fail – the jury verdict form. The verdict form did not ask the jurors to break down how they reached the total damages number; rather, the form provided one line for the jurors to write in the total damages awarded:

```
CLAIM NO. 1:  EVENTBRITE'S CLAIM AGAINST MRG DEFENDANTS FOR BREACH
                                OF CONTRACT

     On the first cause of action in Plaintiff Eventbrite, Inc.'s ("Eventbrite") Complaint against
Defendants M.R.G. Concerts Ltd. and Matthew Gibbons (collectively "Defendants"), please answer
the following questions as directed:


  1. Do you find that Defendants breached the Services Agreement, dated December 5, 2019, as
     amended?

       ✓   YES                              ____ NO


  2. If your answer to Question #1 is YES, please specify the amount of damages Eventbrite is
     entitled to recover:           $ 11 million.    USD
```

Dkt. No. 201 at 2 (Verdict Form).[5]  Thus, the Court and the parties have no way of knowing exactly how the jury calculated and allocated damages, including how the jury calculated the amount Eventbrite was due under the True-Up Provision.  Indeed, during closing, Eventbrite's counsel explained the various ways in which the jury, in its discretion, could calculate True-Up Provision damages.  Tr. Trans. (Eventbrite Closing) 1201: 19-1202:22[6].

---

[5] While the parties submitted competing verdict forms, neither proposed a form that asked jurors to break down the total amount of damages awarded.  Dkt. No. 162 (Eventbrite Proposed Jury Verdict Form); Dkt. No. 155 (MRG Proposed Verdict Form); *See, e.g., Teutscher v. Woodson*, 835 F.3d 936, 950 (9th Cir. 2016) ("Indeed, because he agreed to the lump-sum verdict form, Teutscher waived any argument that the jury's verdict should or could be parsed between its compensatory components ….")

[6] Mr. Cashman: "Now, how do we calculate the true-up payment?  Well, Mr. Baker gave you the information and the evidence that you need to make that determination.  And again it's right

MRG argues the damages award, specifically with respect to the True-Up Provision, is an unenforceable penalty, improperly allowing Eventbrite to recover all the money "it would have received if the contract had not been breached without taking into account any of the costs or expenses that were saved as a result of not having to perform." Dkt. No. 206 at 20 (JMOL). But, again, because of the verdict form, there is no way of knowing why or how the jurors calculated the True-Up Provision amount – as Eventbrite argues, the reduction may reflect MRG's exact concerns, reducing the award in light of Eventbrite's costs. Dkt. No. 209 at 19 and 25 (Opp. to JMOL).

MRG also argues damages awarded stemming from the True-Up Provision are speculative and therefore the Court should reduce the damages award. Dkt. No. 206 at 21-25. In support of this assertion, MRG does not cite to the True-Up Provision, §8 of the parties' contract. Rather MRG cites to the very last sentence of §7, pertaining to the Sponsorship Payment, which states "The parties agree that the damages to Eventbrite <u>from the foregoing</u> are difficult or impossible to ascertain and that repayment of the Sponsorship Payments is a reasonable approximation of such damages and will be deemed liquidated damages and not a penalty." Dkt. No. 206-10 at 5 (Eventbrite Services Agreement §7(b)) (emphasis added). Thus, this language has nothing to do with the True-Up Provision. Indeed, the language of the True-Up Provision is clear, stating: "The remedies under this section are cumulative and in addition to all other available remedies." Dkt. 206-10 at 5 (Eventbrite Services Agreement §8(c)).

MRG has failed to carry its heavy burden to persuade this Court to disturb a thoughtful and diligent jury's verdict. The JMOL is DENIED.

---

in the contracts. It's between 2 and $8 a ticket, for a minimum of 1,600,000 tickets. That is the starting place. There is a range. It could be on the lower, it could be on the higher end. That's up to you. … Well, MRG did not sell 1,600,000 tickets. It sold 89,678 tickets. That was less than 900,000. Basically got 5 percent of the way through the minimum of the contract. And so, those tickets, those 89,000 tickets, they yielded just under 485,000 in fees. So that is the deduction that you make from the true-up payment. But here's how you do the math, folks. If you take the [most likely average per ticket fee of] 5.75 and multiply it by the 1,600,000 tickets you get 9.2 million in expected payments from MRG. Credit them for the fees that were generated, 484760, and you end up with 8,715,240. That's the true-up payment that Eventbrite calculated based on the information available today."

10

## II. Eventbrite's Motion for Fees

An award of fees is appropriate where (1) the action in which the fees are incurred arises from a contract; (2) the contract contains a provision stating that attorney's fees incurred to enforce the contract shall be awarded to the prevailing party; and (3) the party seeking fees is indeed prevailing party in the contract dispute. *Penrod v. AmeriCredit Fin. Servs., Inc. (In re Penrod)*, 802 F.3d 1084, 1087-88 (9th Cir. 2015). In the instant action, Eventbrite has established each of these elements[7], thus, what's left for the Court to determine is how much to award.[8]

MRG does not oppose Eventbrite's request for post-judgment interest. Dkt. No. 207 at 22 (Fees Mtn.); Dkt. No. 208 at 7 (MRG Opp. To Fees Mtn.). The applicable federal post-judgment statutory rate under 28 U.S.C. § 1961 was 2.14% annually the week prior to the entry of judgment on June 10, 2022. Nor does MRG dispute Eventbrite is entitled to pre-judgment interest on the prior balance of $1,568,842 awarded by the jury. Dkt. No. 208 at 7 (MRG Opp. To Fees Mtn.). Unfortunately, these are the only categories the parties agree upon.

MRG helpfully laid out the parties' differences in the chart below:

| Categories Requested | Eventbrite's Request | Defendants' Calculation | Basis for Reduction |
|---|---|---|---|
| Pre-Judgment Interest on Prior Balance of $1,568,842 | $312,592 | $312,592 | n/a |
| Pre-Judgment Interest on True-Up Damages of $6,335,334.72 | $2,543,910 | $0 | No pre-judgment interest is available because damages were not certain |
| Pre-Judgment Interest on Remainder of Damages of $3,095,823.28 | | $592,300.70 | 9% annual interest rate applies over 1% monthly interest rate |
| Attorneys' Fees | $900,930 | $450,465 | 25% discount for block billing; 25% discount for staffing decisions |
| Costs | $114,051.69 | $90,330.73 | $23,720.96 in unsupported costs |
| Total | $3,871,483.69 | $1,445,688.43 | |

---

[7] The parties' contract specifically states "In the event of a dispute between the Parties, the prevailing Party for any such action will be entitled to its reasonable attorneys' fees and costs incurred in the action from the other party." Dkt. No. 206-10 at 9 (Services Agreement).

[8] MRG's opposition only disputes how much the Court should award but does not argue whether fees are appropriate – conceding some amount should be awarded. See Generally Dkt. No. 208 (MRG Opp. To Fees Mtn.).

11

Dkt. No. 208 at 7 (MRG Opp. To Fees Mtn.). The Court will discuss each category in turn.

### A.   Pre-Judgment Interest on True-Up Payment Damages

Pre-judgment interest is not a penalty, rather, it is an independent element of compensation. *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984). Pre-judgment interest ensures complete compensation for the loss of money due as damages from the time a claim accrues until judgment is entered. *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987). Where a contract provides for pre-judgment interest as well as a pre-judgment interest rate, the Court simply applies the contractual rate to the judgment. *Roodenburg v. Pavestone Co., L.P.*, 171 Cal. App. 4th 185, 192 (2009) ("The obligation to pay interest on any amount ultimately determined to be owed is no less enforceable than the obligation to pay the value of the capital account or the severance payment.").[9]

Eventbrite argues it is entitled to pre-judgment interest on the $9,431,158 in damages (total damages less the $1,568,842 in prior balance damages), calculated based on a 1% monthly interest rate, pursuant to §4.5(a) of the *Merchant Agreement* which was incorporated by reference into the parties' *Services Agreement*. Dkt. No. 206-10 at 5 (Services Agreement §10)[10]; Dkt. No. 207-13 at

---

[9] MRG argues the contractual pre-judgment interest clause does not apply for a myriad of reasons, including the pre-judgment interest on the True-Up Provision damages cannot be awarded because they were uncertain and undisclosed prior to trial. The Court disagrees. Plaintiff's complaint, filed in June 2020, specifically states MRG breached its obligations to Eventbrite by "failing to make the True-Up payment…" Dkt. No. 1 at ¶35 (emphasis added). Likewise, Eventbrite listed payment of the True-Up payment in its initial disclosures served on November 6, 2020. Dkt. No. 206-4 at 5. Thus, the True-Up Payment damages have been disclosed from the start of litigation. Further, the Merchant Agreement specifically states pre-judgment interest applies to "any amount owed pursuant to the Terms of Service" should MRG breach "any [] applicable agreement for Services provided by Eventbrite." Dkt. No. 207-13 at 14 (§ 4.5(a) of Eventbrite Merchant Agreement) (emphases added). The parties' Services Agreement qualifies as an "applicable agreement for services." Thus, the parties' contractual terms call for pre-judgment interest on "any amount owed" without mention of the amount's certainty. Further, MRG litigated this case for two years. It had ample time to investigate the amount of damages.

[10] "This agreement includes and incorporates Eventbrite's Standard Terms and Conditions which are attached as the Standard Terms and Conditions Exhibit as well as the Eventbrite Terms of Service (the "**Terms of Service**"), which are incorporated into this Agreement by reference." (emphasis in original). The Merchant Agreement was part of Eventbrite's then-effective Standard Terms and conditions. *Id*; Dkt. No. 207-14 at 3 (§1.3 of March 2019 Eventbrite Terms of Service Incorporated in the Parties' Services Agreement) ("If you are an Organizer offering events with paid tickets, Eventbrite's Merchant Agreement … [is] applicable to you.").

12

14 (§4.5(a) of Eventbrite Merchant Agreement). Specifically, the Merchant Agreement states:

> If Organizer [MRG] fails to pay to Eventbrite or any of its Affiliates any amount owed pursuant to the Terms of Service (including without limitation this Merchant Agreement) or any other applicable agreement for Services provided by Eventbrite or any of its Affiliates when due and following a late payment notice being delivered by Eventbrite, such amount will bear interest calculated from the date due until paid in full at a rate equal to the lesser of (i) one percent (1%) per month, compounded monthly; and (ii) the maximum amount permitted by applicable local, state, provincial, national or other laws, rules or regulations.

Dkt. No. 207-13 at 14 (§ 4.5(a) of Eventbrite Merchant Agreement) (emphases added).

"Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." California Civil Code § 3289; *U. S. for Use of Indus. Lumber Co. v. F. D. Rich Co.*, 473 F.2d 720, 726 (9th Cir. 1973), *aff'd in relevant part, rev'd on other grounds*, 417 U.S. 116 (1974) ("Any legal rate of interest stipulated by contract is chargeable after breach thereof."); *Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 934 (1995) ("Civil Code section 3289 provides for an award of interest at the rate stated in the contract …."). As such, the Court finds the Merchant Agreement's pre-judgment interest rate of 1% per month should be applied to $9,431,158 of the jury's award (the total award ($11 million) less the prior balance MRG owed Eventbrite ($1,568,842)).

For these reasons, as well as those stated in Eventbrite's motion, the Court GRANTS Eventbrite's request for pre-judgment interest as to the full damages amount, which, at the time of the filing of MRG's opposition to the fees motion totaled $2,543,910.

**B.     Fees**

Eventbrite requests $900,930 in attorneys' fees for two years of contentious litigation that involved extensive motion practice and went to trial. Dkt. No. 207 at 14 (Fees Mtn.). MRG argues the fee award should be reduced by 25% because of the attorneys' use of block billing and an additional 25% because Eventbrite's counsel staffed the matter with unnecessarily senior attorneys amounting to "improper staffing." Dkt. No. 208 at 21 – 25. Neither of defendants' arguments are prevailing.

First, block billing, alone, does not require the Court to reduce fees. *Ridgeway v. Wal-Mart*

*Stores Inc.*, 269 F. Supp. 3d 975, 989 (N.D. Cal. 2017) ("The Court will not reduce plaintiffs' fees due to block billing."); *PQ Labs, Inc. v. Qi*, No. 12-0450, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015) ("block billing has been accepted in this district"). Here, the billing entries are "detailed enough for the Court to assess the reasonableness of the hours billed," and as such should not be reduced. *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010) ("The Court concludes that the entries Amtrak identifies as block-billed are detailed enough for the Court to assess the reasonableness of the hours billed. Therefore, a reduction for block billing is not necessary.").

Second, MRG's argument that Eventbrite's legal team was "improperly staffed" is without merit. At the start of this matter, Eventbrite's counsel charged $650/hour for partners, $525/hour for Of Counsel, and $200/hour for paralegals. Dkt. No. 207 at 13 (Fees Mtn.). In August 2021, those rates were reduced to $500/hour for partners and $400/hour for Of Counsel. Eventbrite's legal team has charged less than many large law firms charge for their junior associates and less than rates approved years ago by courts in this district. *See, e.g., In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (In 2015 in "the Bay Area, reasonable hourly rates for partners range from $560 to $800 ….") (citation and quotations omitted); *Minor v. Christie's, Inc.*, Nos. C 08-05445 WHA, C 09-00471 WHA, 2011 WL 902235, at *7 (N.D. Cal. Jan. 28, 2011) (approving rates of $600-$700 for partners in breach of contract action in 2011); *Santa Fe Pointe, L.P. v. Greystone Servicing Corp.*, No. C-07-5454 MMC, 2009 WL 3353449, at *2-3 (N.D. Cal. Oct. 16, 2009) (approving rate of $675 for partner with 20 years' experience in breach of contract action in 2009). The matter was leanly staffed with two Partners and one Of Counsel. Dkt. No. 207-1 at ¶6 (Cashman Decl. ISO Fees Mtn.). Further, the Singer Cashman firm does not employ junior associates – indeed, the most "junior" attorney there has 12 years' experience. Dkt. No. 211 at 19 (Reply ISO Fees Mtn.).

Plaintiff's motion for attorneys' fees is GRANTED in full.

### C.     Costs

Eventbrite seeks costs of $114,051.69. Dkt. No. 207 at 7 (Fees Mtn.). MRG argues $23,720

14

of the total is "vague and unsupported," Eventbrite's requested costs should be reduced by that amount. The Court disagrees. Again, this case was litigated for two years. $114,051.69 in costs is eminently reasonable. The expenses for "Local Travel" that MRG takes exception to were actually non-refundable hotel reservations that were cancelled when trial was pushed back a week after defense witnesses tested positive for COVID.

Plaintiff's motion for costs is GRANTED in full.

## CONCLUSION

MRG's JMOL is **DENIED** in full.

Eventbrite's motion for fees is **GRANTED** as follows:

(1) Eventbrite's attorney fees in the amount of $900,930.

(2) Eventbrite's litigation costs in the amount of $114,051.69.

(3) Pre-judgment interest on prior balance ($1,568,842) MRG owed Eventbrite in the amount of $312,592.

(4) Pre-judgment interest on remaining damages (total jury award ($11 million) less the prior balance damages ($1,568,842)) in the amount of $2,543,910.

(5) Post-judgment interest to begin accruing from June 10, 2022 (date of entry of judgment) at the contractual rate of 9% annually as to the $1,568,842 prior balance.

(6) Post-judgment interest to begin accruing from June 10, 2022 (date of entry of judgment) as to the balance of the jury award (total jury award ($11 million) less the prior balance damages ($1,568,842)) at the statutory rate under 28 U.S.C. § 1961.

**IT IS SO ORDERED**.

Dated: November 1, 2022

_____
SUSAN ILLSTON
United States District Judge